P6AVKURS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

v.                                    22 Cr. 457 (LTS)

ROBERT KURLANDER,

                Defendant.            Sentence

------------------------------x

                                      New York, N.Y.
                                      June 10, 2025
                                      11:05 a.m.


Before:

                    HON. LAURA TAYLOR SWAIN,

                                      Chief District Judge


                            APPEARANCES


JAY CLAYTON
      United States Attorney for the
      Southern District of New York
ROBERT B. SOBELMAN
      Assistant United States Attorney

FLORIAN MIEDEL
      Attorney for Defendant

Also Present:  Anthony Casola, FBI

P6AVKURS

(Case called)

THE COURT:  Again, good morning.

Counsel, would you please introduce yourselves.

MR. SOBELMAN:  Robert Sobelman, for the United States. And I'm joined at counsel table by Anthony Casola, a special agent with the Federal Bureau of Investigation.

Good morning, your Honor.

THE COURT:  Good morning, Mr. Sobelman, and Special Agent Casola.

MR. CASOLA:  Good morning, your Honor.

MR. MIEDEL:  Good morning, your Honor.

Florian Miedel, here with my client Robert Kurlander.

THE COURT:  Good morning, Mr. Miedel; and good morning, Mr. Kurlander.

And Mr. Kurlander, are there any friends or family here in the courtroom?

MR. MIEDEL:  Yes, there are two friends here.

THE DEFENDANT:  My mother is 92, so she couldn't make it up.  She lives with me.

THE COURT:  Yes.

Good morning.  Thank you for coming to court today. And greetings to the others who are here to observe.  And regards to your mother.

So we are here today for sentencing.  I've received and reviewed the presentence investigation report, which is

P6AVKURS

dated April 29th, 2025, including the recommendation and addendum.  I've also received and reviewed the defense letter submission which is dated May 25th, 2025, which was accompanied by a letter from Mr. Kurlander's physician; and a psychological evaluation report which were dated March 16th, 2025, and October 20th, 2023, respectively.  I've also received and reviewed the government's June 3rd, 2025 letter submission. Those submissions have all been filed under seal for reasons identified in sealed orders.

Are there any other written submissions that the parties intend me to have considered in connection with the sentencing?

MR. SOBELMAN:  No, your Honor.

MR. MIEDEL:  No, your Honor.

THE COURT:  Are there any applications regarding access to this proceeding or record pertaining to this proceeding other than those that I have filed under seal pursuant to the orders?

MR. SOBELMAN:  No, your Honor.

MR. MIEDEL:  No, your Honor.

THE COURT:  Thank you.

Mr. Sobelman, would you please make a statement regarding the government's victim identification and notification activities in connection with this proceeding.

MR. SOBELMAN:  Yes, your Honor.

P6AVKURS

With respect to the victim in this case, the government understands that the normal victim notification system procedure was followed to notify the victim of the occurrence of this proceeding.  And, in addition, I personally reached out to counsel for the victim to assure that he was aware of this proceeding today.

THE COURT:  Thank you.

And you've had no requests to speak or a specific victim impact submission in connection with this proceeding?

MR. SOBELMAN:  Not with respect to today's proceeding. The Court, I'm sure, will recall there was a letter submitted by the victim in connection with Aimee Harris's sentencing, which I believe is referenced in the PSR.

THE COURT:  Yes.

Mr. Miedel, have you read the entire presentence report and discussed it with Mr. Kurlander?

MR. MIEDEL:  Yes, I have.

THE COURT:  And have you also reviewed and discussed with Mr. Kurlander the additional submissions in connection with today's proceeding?

MR. MIEDEL:  Yes, I have.

THE COURT:  Mr. Kurlander, have you yourself reviewed the presentence report and the submissions?

THE DEFENDANT:  Yes, your Honor, I have.  I've read it.

P6AVKURS

THE COURT:  And have you discussed them with your attorney?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Thank you.  You can be seated again.

Mr. Miedel, does the defense have any objections or other issues with respect to the content of the presentence report that you wish to address?

MR. MIEDEL:  No, your Honor.

THE COURT:  Thank you.

Mr. Sobelman, does the government have any objections or other issues with respect to the content of the report?

MR. SOBELMAN:  No, your Honor.

THE COURT:  What is the government's position with respect to restitution?

MR. SOBELMAN:  The government is not seeking restitution in this case.

THE COURT:  Very well, then.

Since I have no information on the basis of which to make a restitution component of the sentence, there will be no restitution component of the sentence.

And what is the government's position with respect to forfeiture?

MR. SOBELMAN:  This Court previously entered a consent preliminary order of forfeiture with respect to Mr. Kurlander, and we ask that that prior order be incorporated into the

P6AVKURS

judgment in this case.

THE COURT:  All right.  And so that order has already been entered on the docket back in 2022; is that correct?

MR. SOBELMAN:  Yes, your Honor.

THE COURT:  Thank you.

Mr. Sobelman, would you like to make a motion now?

MR. SOBELMAN:  Yes, your Honor.

The government moves pursuant to United States Sentencing Commission Section 5K1.1 under those factors that the defendant be sentenced in consideration of those factors.

THE COURT:  And you have addressed those factors in your June 3rd letter?

MR. SOBELMAN:  Yes, your Honor.  We ask that the basis for that motion be the contents of that letter.

THE COURT:  Thank you.

I have reviewed the letter carefully, and I find that the information provided in the letter establishes that Mr. Kurlander has provided the requisite substantial assistance.  And so I grant the motion.

And in light of the fact that I've granted the motion, the statute and guidelines permit me to sentence Mr. Kurlander without regard to the normally applicable advisory guidelines, and to depart downward, in consideration of the factors that are set forth in subsections (a)(1) through (5) of Section 5K1.1 of the guidelines in fashioning a sentence.

And so now I am ready to hear from counsel with respect to general sentencing issues.

Mr. Miedel, would you like to start?

MR. MIEDEL:  Thank you, your Honor.

I know the Court has carefully read and considered my sentencing submission, as well as the government's letter, so I'll be brief.

As you know from the sentencing submissions, Bobby Kurlander has not had an easy life.  For one, his body has not been his friend.  For many years he has suffered from a litany of physical issues, as detailed in our letter.  His mind has also not been his friend.  As you know, he suffers from the conditions that I described in my letter.

These maladies, both physical and mental, have had a profound impact on Mr. Kurlander's life.  They have interfered with romantic relationships and social relationships generally, and they have affected his work life, essentially forcing him to work for himself in ways that were sometimes isolating and often unproductive.  And they led him during COVID to hit rock bottom, ready to abandon his life altogether.

As we discussed in our sentencing memo, these circumstances were essentially a perfect storm to set the stage for allowing Mr. Kurlander to participate in this scheme.

As awful as it sounds, his participation in the Biden diary scheme possibly saved his life, because it pulled him out

P6AVKURS

of that hole and gave him a purpose and provided him with a sense of importance and self-esteem that he had sorely been lacking.

I say none of this, your Honor, to condone that behavior; even in the state that he was in, he knew better. There were, of course, other more productive ways to get help.

I say it to try to explain why he helped Aimee Harris after she stole the diary. As I said in the memo, at a different time in his life, this might have turned out very differently. But he knows this is not an excuse. His conduct, his participation — even though he is not the one who stole the diary — hurt somebody very badly. And even though hurting Ashley Biden was not the reason he participated, of course, it was a consequence that he ultimately didn't care enough about. And that feels extremely shameful to him now.

Once the investigation began, Mr. Kurlander knew what he needed to do. He was profoundly aware of what he had done wrong, and his decisions at that point that you're well aware of were born out of that acceptance of responsibility. As I said, you're aware of these circumstances, but I just want to emphasize that he was fully committed to the process from the get-go.

As you know, the guideline range here is four to ten months. All of these facts, I hope, should make it easy, however, to conclude that a sentence of time served is a

P6AVKURS

reasonable, fair, and just sentence here.

This was a shameful episode in Bobby Kurlander's life, one he has tried hard to put behind him. But because of the media attention to this case, it lives on, on an almost daily basis.

But he is profoundly remorseful and he has done his best to make amends. He has done what is right in the years since this happened. I, therefore, respectfully urge you to conclude that Mr. Kurlander can now move on with his life.

Thank you.

THE COURT:  Thank you, Mr. Miedel.

Mr. Sobelman.

MR. SOBELMAN:  Your Honor, the government will rest on its submission, but is available to answer any questions the Court may have.

THE COURT:  I thank you. The content of the submission is clear.

Mr. Kurlander, would you like to speak for yourself before I decide on your sentence?

THE DEFENDANT:  Good day, your Honor.

THE COURT:  Good day.

THE DEFENDANT:  First, I want to apologize for postponing it the first time. I had a foot infection, so I couldn't make it here. So sorry about that.

THE COURT:  I hope you're feeling better now.

P6AVKURS

THE DEFENDANT:  It's getting there.

THE COURT:  Good.  Bit-by-bit.

THE DEFENDANT:  Your Honor, I'm truly sorry for being involved in any of this.  It's totally my fault.  I can't blame it on things that were going on in my life at the time which weren't good mentally or life changingly, physically.  I'm responsible for my actions, and I have to live with that.

And I never, ever wanted to hurt Ashley Biden, and I feel terrible — and only, I hope, some day I can make it up to her because she didn't deserve this.

I feel like I'm the idiot of the century for even being involved.  And I've always believed that you should have adversity with integrity.  And I failed at that on my own thinking when it came to this.  So I profusely apologize.

I'm sorry to have wasted -- or not wasted, but taken the government's time and your time and everything else.  And I promise it will never happen again.  It's rattled me to my core.  And please forgive me.  I apologize.

THE COURT:  Thank you, Mr. Kurlander.

It's important to have heard you say all that publicly, and I thank you for your candor.

I'd ask that everybody just sit quietly for a couple of minutes while I reflect on what I've heard and make my final decision, which I will then explain and announce.  So we'll all just sit here quietly together.

P6AVKURS

(Pause)

THE COURT:  Thank you for your patience.

I've read all of the submissions carefully and I've listened carefully to everything that has been said in court today.  I adopt the factual recitation that is set forth in the presentence report.

The Court has discretion, taking into account the applicable statutory provisions, in exercising its power under Section 3553(a) of Title 18 to determine the particular sentence to be imposed in each particular case.  The statute requires the Court to consider the provisions of the sentencing guidelines, along with a number of other specific characteristics, factors, and goals.  And it requires the Court to impose a sentence that is sufficient, but not greater than necessary, to comply with the statutory sentencing purposes.

As to the sentencing guidelines, I conclude that the applicable guideline offense level is 9, and that the applicable criminal history category is I, for the reasons that are set out in the presentence report.

Accordingly, the advisory guideline range for a custodial sentence is from four to ten months of imprisonment. And I have used the November 1, 2024 edition of the guidelines manual in making these determinations.

As I previously noted, I will depart downward from the advisory guidelines, in light of Mr. Kurlander's substantial

P6AVKURS

assistance to the government in its prosecutorial and investigative activities.  This cooperation is detailed in the government's letter and further detailed in the defense submission.  And I find, based on those submissions, that there is ample basis for a significant downward departure pursuant to Section 5K1.1 of the guidelines.

I have also considered, pursuant to Section 3553(a), all of the statutory sentencing factors and goals, and all of the information that has been put before me in light of those factors and goals.  And that includes the fact that Mr. Kurlander has been on pretrial supervision and has complied with all of the conditions of that supervision for almost three years, since August of 2022.

I will review briefly certain of the Section 3553(a) factors and related facts here.

First, the nature and circumstances of the offense. Mr. Kurlander has been convicted of participating in a conspiracy to commit interstate transportation of stolen property, in violation of Sections 371 and 2314 of the United States Code, and he has admitted his conduct and accepted responsibility for that.

In the spring of 2020, he and his co-defendant, Ms. Aimee Harris, worked together to sell sensitive personal items of a third person who left them for storage in a residence that Ms. Harris subsequently occupied.  Ms. Harris

P6AVKURS

stole the items and reached out to Mr. Kurlander, who responded enthusiastically about seeking a buyer.  They intended to make money.  And they knew that the items would cause embarrassment and unwelcome attention to the victim and to the victim's prominent family.

        To that end, they approached an organization to sell the property.  They traveled to New York to meet the organization, taking the stolen property with them.  And the organization agreed to buy the property and paid Mr. Kurlander and Ms. Harris accordingly.

        After returning to Florida, they stole additional property from the residence which later was sold to the organization.  And all in all, the organization paid them a total of $40,000 for the property of which Mr. Kurlander received 20,000.  This criminal behavior was serious, it was inexcusable, and it was cruel to the victim.

        I next turn to Mr. Kurlander's personal history and characteristics.  He is now 61 years old, he suffers from a number of physical ailments, some of which seriously impair his bodily functions and require painful adaptive measures and monitoring.  And he also suffers from serious mental health issues that, according to the defense and materials that I have read, apparently contributed to his inappropriate reaction to the opportunity to try to monetize the stolen property.  The conditions are detailed in the sealed submissions that the

P6AVKURS

Court has reviewed.  He follows a complex daily medication regimen and is regularly under the care of medical and mental health professionals.

In addition to the daily intrusions and discomforts associated with his medical issues, Mr. Kurlander continues to deal with his mental health issues; and he has expressed today, as well as through his counsel, his deep sense of shame, remorse, and empathy for the victim in connection with this crime and this prosecution.

He does have a criminal history; this is not his first offense.  His previous convictions occurred more than 25 years ago.  He did serve a prison sentence in the late 1990s in connection with one of them.  And he was in a diversion program following an arrest in 2011 that he completed successfully.

He proffers through his counsel that the crime was committed — the crime that's brought us here today — not out of a need for money, but rather out of a need to feel important and to feel relevant in the course of a life in which he has often felt socially inept and isolated, and that he has primarily spent in recent years quietly living with his mother and focusing his attention on solitary activities.  As his lawyer has informed the Court, at base, this criminal activity was about being seen and about being important.

Now to address the goals of sentencing in connection -- in light of these facts.

P6AVKURS

Mr. Kurlander's crime was very serious.  It calls for a meaningful sentence to reflect the need for punishment, and it calls for penalties consistent with the goals of general deterrence and promotion of respect for the law.

In a victim impact statement that was submitted in connection with the prior sentencing, the victim described the crime as heinous bullying and a serious violation of privacy and personal dignity.  And that has been reflected in all of the public information about the crime and its consequences.

The Court has not received any information that would support a restitution aspect of the sentence, so although this is a crime for which restitution would be mandatory, there will not be any restitution component.

The Court has considered the need to avoid unwarranted sentencing disparities between similarly situated defendants. So the Court has considered the Sentencing Commission's database of sentences across comparable criteria, and those data reflect that the median sentence of imprisonment for similarly situated defendants was a noncustodial sentence of three months -- I'm sorry, noncustodial sentence of no imprisonment, and the average would have been three months.

Most relevant is the sentence of Mr. Kurlander's co-defendant, Ms. Harris.  She was sentenced to one month of incarceration and three months of home confinement as part of a supervised release term.

P6AVKURS

The government and the defense represent that Mr. Kurlander is somewhat less culpable than Ms. Harris, because Ms. Harris was the one who stole the items and initially approached Mr. Kurlander because she needed money.

It seems to the Court that Mr. Kurlander, as reflected in the record before the Court, was also a leader — albeit in the steps taken — to obtain financial gain from the enterprise. And it is clear, in any event, that neither of the defendants exercised good intellectual or moral judgment.

So there's no clear discrepancy and culpability that is apparent to the Court.  But Ms. Harris was consistently more resistant to accountability during the course of this prosecution, and she engaged in dilatory and disruptive conduct in connection with the proceedings in this Court.

Mr. Kurlander, on the other hand, cooperated promptly and has provided substantial assistance to the government.

And so the Court has considered the seriousness of the offense and the need for deterrence, promotion of respect for the law, and protection of the public.  The Court has also considered Mr. Kurlander's significant mitigating factors, including his compliance with the conditions of supervision, his physical ailments, his mental health illnesses, and the need to avoid unwarranted sentencing disparities between similarly situated defendants.

The factors that are specific to substantial

P6AVKURS

assistance point strongly in favor of a significant downward departure pursuant to Section 5K1.1 of the sentencing guidelines. His cooperation was prompt and candid and effective in the ways needed in these circumstances. He has also been subject to negative attention, negative public attention. And due to the length of the relevant proceedings, he has spent an unusually long time under pretrial supervision with which he has complied consistently. He also expresses deep and sincere remorse.

The Court will depart downward to fashion a sentence that is reasonable, appropriate, and no greater than necessary to satisfy the statutory purposes of sentencing.

The Court finds that Mr. Kurlander is required to forfeit to the United States the $20,000 proceeds that are traceable to his crime. This obligation is reflected in the consent preliminary order of forfeiture that has already been entered on the record.

I will now state the sentence that I intend to impose.

Mr. Kurlander and Mr. Miedel, would you please stand.

Mr. Kurlander, it is the judgment of this Court that you are to be sentenced to time served, with no supervised release to follow.

The Court finds that, in light of your three successful years under pretrial supervision and your faithful utilization of community resources to address your health

P6AVKURS

needs, further supervision is not necessary to help you stay on track as a positive contributor to the community.

Just bear with me here.

In light of your financial circumstances, I will not impose a fine on you.  And I will order, however, that you pay to the United States the mandatory special assessment of $100, which is due immediately.  You must notify the United States Attorney for this district within 30 days of any change of mailing or residence address that occurs while any part of the special assessment remains unpaid.

I also order that you forfeit to the United States $20,000, representing the proceeds traceable to your crime as reflected in the consent preliminary order of forfeiture.

I believe that this sentence is reasonable within the meaning of the law, sufficient, appropriate, and no greater than necessary to satisfy the statutory purposes of sentencing, which include punishment and deterrence.

Mr. Miedel, do you know of any legal reason why this sentence should not be imposed as stated?

MR. MIEDEL:  No, your Honor.

THE COURT:  Mr. Sobelman, do you know of any legal reason why this sentence should not be imposed as stated?

MR. SOBELMAN:  No, your Honor.

THE COURT:  Sentence as stated is imposed.

I must say something important to you about appeal

P6AVKURS

rights, Mr. Kurlander.

To the extent you have not given up your right to appeal through your guilty plea, you have the right to appeal this sentence. If you are unable to pay the cost of an appeal, you may apply for leave to appeal *in forma pauperis*. At your request, the Clerk of Court will file a notice of appeal for you, and any notice of appeal must be filed within 14 days of the Judgment of Conviction. So make sure that you touch base with Mr. Miedel about this issue today before you part company.

Mr. Sobelman, are there any remaining counts or underlying indictments that need to be addressed?

MR. SOBELMAN: No, your Honor.

THE COURT: Thank you.

I'd just like to say a few more words to you, Mr. Kurlander, and thank you in advance for listening.

You committed a serious crime, as you have admitted. And it was a crime that hurt someone who was vulnerable. And you made a series of very poor choices in that regard.

I understand from what you said to me here today and the way you've lived your life since that you have focused on thinking about the consequences of the past actions. And I urge you always in every decision that you make going forward to think about potential consequences of actions before you take them so that everything that you do will be consistent with the honor in which you should hold yourself as a human

P6AVKURS

being, the honor and love that you have for your family, the respect that you have for your community, and the respect that you should always show for yourself.

And I believe, based on what you've told me and what I've learned about you, that you're embracing this practice in light of past experience and going forward in a better way. And I commend you and encourage you to continue to go forward in that way.

You have worked in a variety of fields, you have also worked every day, and continue to work to overcome the effects of various ailments. And I'm confident that you have the power to continue to do that. And I think you said something to me to the effect that having failed to meet adversity with integrity, you won't fail in that regard in the future. And I just encourage you to turn that into a promise also that you'll never again do anything that could even put you at risk of going to prison, because your life and your freedom and the people who depend on you are just too precious for that.

So work at being a good example for your family and friends and encouraging yourself and them by doing that every day. And I encourage your family and your friends to work in every way to encourage you and to encourage you to hold yourself to the undertakings that you have made.

And I wish all of you continued strength. And I thank your friends for attending here today in court.

P6AVKURS

And I thank you for listening.

THE DEFENDANT:  That was very nice, your Honor.

Thank you.

THE COURT:  Well, it's meant.

And I thank counsel, Mr. Miedel and Mr. Sobelman, for their work.  I thank Special Agent Casola for his very important work in investigating and in the prosecution of this serious crime.

I will direct that the Sentencing Commission receive a copy of the presentence report.  All other copies of the report must remain confidential.

If an appeal is taken, counsel on appeal are to be permitted access to the report.

Counsel, is there anything further that we should take up together today?

MR. MIEDEL:  Your Honor, yes.  One thing.

In light of the Court's sentence, we would ask that Mr. Kurlander's passport be released by pretrial services.  I neglected -- I didn't bring along a proposed order.  He's here only for a couple of days.  I think that the pretrial services has the passport in this building; so I would ask if the Court would direct pretrial services to return it to him.

THE COURT:  And so you want to be able to accomplish that before you leave the building today?

MR. MIEDEL:  That would be perfect.

P6AVKURS

THE COURT:  So I need to write up an order.

All right.

MR. MIEDEL:  That would be perfect.

THE COURT:  No objection, Mr. Sobelman?

MR. SOBELMAN:  That's correct, your Honor.

THE COURT:  And so, Ms. Ng, may I bother you for an order that says that in light of the sentence of time served, with no supervision to follow, the pretrial services office is directed to return Mr. Kurlander's passport to him.

And so you can be seated.  That will take a little bit to type up.  Thank you.

MR. MIEDEL:  Thank you.

THE DEFENDANT:  Thank you, your Honor.

THE COURT:  You're welcome.

(Pause)

THE COURT:  Thanks very much.

So, Ms. Ng, will give you the order, once we adjourn, which I guess I am doing now.

So stay safe and keep well, everyone.

MR. MIEDEL:  Thank you very much, your Honor.

THE DEFENDANT:  Your Honor, thank you.

THE COURT:  Thank you.

THE DEFENDANT:  You're a very nice person.

*     *     *